UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Errika Brown, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>S. C. Johnson & Son, Inc.,<br><br>Defendant | 3:22-cv-50001<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. S. C. Johnson & Son, Inc. ("Defendant") manufactures, labels, markets, and sells sealable plastic bags in various sizes under its Ziploc brand ("Product").

2. The Product makes claims related to its ability to preserve freshness and provide protection, presumably because of the technology it uses to develop it.

I. PROTECTION CLAIMS

3. The front label states, "Power Shield Technology – Unbeatable Protection," across a silver shield.



4. Consumers seeing this claim will conclude the Product offers best-in-class protection for whatever they put inside it.

5. In the upper right corner, the words STRONGER* THAN HEFTY" appear in miniscule, bold red, with "ON PUNCTURES & TEARS" in smaller black text underneath.

6. The asterisk refers to a disclaimer on the back of the box which states, "Bag film tested using ASTM D1709 Dart Drop and ASTM D2582 PPT."

7. ASTM D1709 is the Standard Test Methods for Impact Resistance of Plastic Film by the Free-Falling Dart Method ("Dart Drop Test") and ASTM D2582, is the Standard Test Method for Puncture-Propagation Tear Resistance of Plastic Film and Thin Sheeting ("PPT Test").[1]

8. Defendant's reliance on these tests is misleading because they are not relevant and/or of limited applicability to consumer usage of the Product.

9. Defendant misleads consumers by not prominently describing and explaining these standards to consumers, including their limitations.

10. Though the small print in the corner attempts to qualify the unbeatable protection by limiting it to punctures and tears, consumers are unlikely to connect the two statements because they are far apart and there is no link between the two claims.

11. Instead, consumers will expect the Product to be made with the most resilient plastic, contain the strongest seal possible, will expand the most, and keep out all air.

12. Defendant's protection claim is false and misleading because other products provide similar protection.

II. **FRESH CLAIMS**

13. "Unbeatable Freshness" tells consumers the Product is superior to other similar

---

[1] ASTM is a global standards organization.

products in preserving freshness and possesses inherent qualities which maintain freshness.



14. Defendant's claim is based on a moisture loss test, which involved placing sliced bread in the Product for 24 hours.

15. The bag was weighed and the difference in weight attributable to moisture loss was calculated.

16. Defendant's reliance on a moisture loss test for this claim is misleading for various reasons.

17. First, the Product is not superior to competitor products.

18. Second, freshness is measured differently based on different foods.

19. Moisture loss is only one way a product can spoil, and one criteria to evaluate a food's freshness.

20. Other spoilage criteria include enzymatic activity, lipid oxidation, fat crystallization (fat bloom), freezer burn (drying), lactose crystallization, oxidation, starch retrogradation, and sugar crystallization (sugar bloom).

21. Storage variables beyond moisture loss which affect the freshness of food include oxygen, humidity, temperature (freeze/thaw), light, handling, and oxidation.

22. If oxygen is present in the vicinity of food, preservation will be significantly impacted.

23. If food is exposed to light, i.e., in the refrigerator, the transparent Product will not offer suitable protection for the contents.

24. Even if a food retains moisture, if it does not prevent mold, consumers will rightfully not consider it fresh.

25. Lipids are highly susceptible to oxidation resulting in the development of oxidative rancidity.

26. Defendant's claim of unbeatable protection based on moisture loss is misleading because some foods are not positively impacted by complete prevention of moisture loss.

27. Strawberries, pictured on the front label, must slowly shed moisture to retain their freshness.

28. When they are prevented from doing this, condensation occurs which damages them.

29. Cheese is another food for which moisture loss is not a relevant criteria to measure whether the Product preserves freshness.

30. Cheese will not be adequately preserved by the Product, because it benefits from humidity, and will not be able to breathe once the bag is sealed.

31. The claim of unbeatable freshness is misleading because it misleads consumers who do not know advanced chemistry about food preservation to think its Product will be useful in all circumstances, when it will not.

32. No single type of storage device can preserve freshness for the range of foods that consumers would put in the bags.

### III. TECHNOLOGY CLAIMS INTENDED TO SUPPORT PROTECTION AND FRESH CLAIMS

33. Consumers will understand Defendant's technology claims to mean the Product has certain advanced qualities which allow it to offer unique benefits in the areas of protection and

4

food preservation.

### IV. CONCLUSION

34. The Product contains other representations which are misleading.

35. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

36. The value of the Product that Plaintiff purchased was materially less than its value as represented by defendant.

37. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

38. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

39. The Product is sold for a price premium compared to other similar products, in sizes including gallons and quarts, and the gallon bags are sold for no less than $4.99 per 38 bags, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

40. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

41. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

42. Plaintiff Errika Brown is a citizen of Illinois.

43. Defendant S. C. Johnson & Son, Inc., is a Wisconsin corporation with a principal

place of business in Racine, Racine County, Wisconsin

44. Defendant transacts business within this District through sale of the Product to residents via third-party retailers and the internet.

45. Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

46. Venue is in the Western Division in this District because a substantial part of the events or omissions giving rise to the claim occurred in Winnebago County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

## Parties

47. Plaintiff Errika Brown is a citizen of Rockford, Winnebago County, Illinois.

48. Defendant S. C. Johnson & Son, Inc., is a Wisconsin corporation with a principal place of business in Racine, Wisconsin, Racine County.

49. Defendant is one of the largest consumer goods companies in the world.

50. Defendant is known as a "family company," and is a real family company.

51. Consumers trust "family companies" more than multinational conglomerates, which Defendant uses to its advantage in selling products and making claims.

52. This gives consumers assurances that what Defendant tells them will be based on facts, and not half-truths or misrepresentations.

53. The Product is available to consumers from third parties, including grocery stores, drug stores, big box and club stores, convenience stores, and online, throughout this District.

54. Defendant is a company with a significant amount of goodwill, trust and equity when it comes to consumer purchasing.

55. Plaintiff purchased the Product (gallon bags) on one or more occasions within the

statutes of limitations for each cause of action alleged, at stores including Walmart, 3902 W Riverside Blvd Rockford, IL 61101 between November and December 2021, among other times.

56. Plaintiff understood the protection and freshness claims to expect the Product had best-in-class abilities and was useful for preserving freshness of all types of foods.

57. Plaintiff did not know of the complicated and inapplicable testing methods Defendant relied on in making these claims.

58. Plaintiff bought the Product because she expected it provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food because that is what the representations said and implied.

59. Plaintiff relied on the words and images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately.

60. Plaintiff was aware of Defendant's pledges and commitments to its customers, its transparency, and honesty, through its extensive marketing and advertising, in stores and across various media.

61. Plaintiff was disappointed because the Product did not provide superior protection, compared to itself and other products, nor superior preservation of the freshness of foods that were placed inside.

62. Plaintiff bought the Product at or exceeding the above-referenced price.

63. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

64. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

65. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

66. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

67. Plaintiff is unable to rely on the labeling and representations about the issues described here for not only this Product, but other similar products, because she is unsure of whether those representations are truthful.

## Class Allegations

68. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and a
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Michigan, Iowa, Rhode Island, Georgia, North Dakota, Texas, New Mexico, North Carolina, Virginia, New Hampshire, South Dakota, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

69. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

70. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

71. Plaintiff is adequate representative because her interests do not conflict with other members.

72. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

73. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

74. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

75. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Plaintiff and class members desired to purchase a product that provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food.

78. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

79. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

80. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

81. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

82. Plaintiff relied on the representations that the Product provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food.

83. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

84. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the ICFA and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

85. Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

86. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

87. In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

88. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food.

89. Defendant directly marketed the Product to consumers through its advertisements and partnerships with other entities, through various forms of media, and in print circulars.

90. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet those needs and desires.

91. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food

92. Defendant's representations affirmed and promised that the Product provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food.

93. Defendant described the Product as one which provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food, which became part of the basis of the bargain that the Product would conform to its affirmation and promise.

94. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

95. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted family company, known for its close connection to its customers, and a reputation for high quality products to make Americans' lives easier.

96. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

97. Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

98. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

99. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

100. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the container or label.

101. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food, and she relied on Defendant's skill or judgment to select or furnish such a suitable product.

102. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

103. Defendant had a duty to truthfully represent the Product, which it breached.

104. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, a trusted family company, known for its close connection to its customers, and a reputation for high quality products to make Americans' lives easier.

105. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and pledges.

106. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

107. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

108. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

109. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

110. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it provided superior protection, in terms of its own features, and compared to other products, and preserved freshness of all types of food.

111. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and/or constructive knowledge of the falsity of the representations.

112. Defendant knew of the issues described here yet did not address them.

113. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

114. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: January 3, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com
